IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNYLSVNIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 12-25396-CMB |
| | ) | |
| MICHELLE L. ROACH, | ) | Chapter: 7 |
| | ) | |
| Debtor, | ) | Adversary No. 13-2064-CMB |
| _____ | ) | |
| | ) | |
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE L. ROACH, | ) | |
| | ) | |
| Defendant. | ) | |

*Appearances:*  Joseph E. Fieschko, Jr., Esq., for Debtor-Defendant, Michelle L. Roach
Donna M. Donaher, Esq., for Plaintiff, PNC Bank, National Association

**MEMORANDUM OPINION**

The matter before the Court is Plaintiff's *Second Amended Complaint to Determine Dischargeability* ("Complaint"). Plaintiff, PNC Bank, National Association ("PNC"), commenced the above-captioned adversary proceeding seeking denial of Debtor's discharge pursuant to 11 U.S.C. §§727(a)(2)(A) and (B), (a)(4)(A), and (a)(7).[1]  For the reasons stated herein, the Court will deny Debtor's discharge pursuant to 11 U.S.C. §727(a)(2)(B) and 11 U.S.C. §727(a)(7).

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334.  This is a core matter pursuant to 28 U.S.C. §157(b)(2)(J), and the Court will enter final judgment in this proceeding.  However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall,* 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

## FINDINGS OF FACT

GRL Packaging, LLC (GRL) was a firm specializing in custom packaging and design founded in April of 2000. Debtor, Michelle L. Roach, was the sole member, officer and employee of GRL. On or about May 18, 2007, GRL borrowed $150,000.00 from PNC pursuant to the Terms of a Promissory Note. In accordance with a Change in Terms Agreement dated March 31, 2008, GRL and PNC agreed to increase the indebtedness to $209,000.00. As security for the loan, Debtor, as the sole member of GRL, executed a Commercial Security Agreement in favor of PNC which granted PNC a security interest in all of GRL's assets without limitation. Additionally, Debtor personally guaranteed the Note. PNC has perfected its security interest in the assets.

After experiencing financial difficulties, in July 2012, Debtor consulted Frank Verterano, Esq. regarding filing for bankruptcy. Attorney Verterano advised Debtor to file both an individual and a business Chapter 7 bankruptcy case for herself and GRL, respectively. Attorney Verterano erroneously counseled Debtor that filing a Chapter 7 business case would not result in the shutting down of GRL and that Debtor could continue to operate her business post-petition. In preparing to file, Attorney Verterano delegated the task of completing both Debtor's and GRL's bankruptcy schedules to Diane E. Vanassa, a paralegal employed by Attorney Verterano's law firm. Through her correspondence with Debtor, Ms. Vanassa incorrectly advised Debtor that as long as the petitions were filed by October 31, 2012, that the account balances and asset valuations provided for Debtor and GRL as of September 30, 2012 would not need updated prior to filing. Debtor credibly testified that, in preparing her schedules, she relied on the advice and expertise of her counsel.

Concurrent with Debtor's individual Chapter 7 Petition, GRL's Chapter 7 Petition was filed on October 31, 2012, wherein it was reported that, as of the date of filing, the balance of GRL's business checking account was $187.60, that GRL had no accounts receivable, and that GRL had made no payments to creditors exceeding $5,850.00 in the ninety (90) days prior to filing. In actuality, as of October 31, 2012, GRL's deposit accounts and accounts receivable were worth $29,717.86 and $38,379.01, respectively, and GRL had paid four (4) creditors each in excess of $5,850.00 in the ninety (90) days prior to filing. Evidence presented at trial showed that on the date of filing, but before the petitions were submitted, Debtor advised Attorney Verterano's office that the balance of GRL's business checking account had reached $24,000.00 that week, however, counsel for Debtor neither changed GRL's petition prior to filing nor advised Debtor that an amended schedule should be filed thereafter. On the contrary, Ms. Vanassa advised Debtor that since the funds were being used to pay the ongoing business expenses of GRL, that Debtor would not want the Chapter 7 Trustee, Charles O. Zebley, Jr., to believe those funds were available to him.

On December 28, 2012, GRL's Section 341 Meeting of Creditors (MOC) was held. At the MOC, upon questioning by Trustee Zebley, Attorney Verterano and Debtor informed Trustee Zebley that Debtor had not ceased operating GRL, that she had used GRL's accounts to pay suppliers since the date of filing, and that said accounts had not been closed. Moreover, Debtor notified Trustee Zebley that there were accounts receivable due to GRL as of the date of filing, that creditors had been paid, possibly in excess of $5,000.00, within ninety (90) days prior to filing, and that Debtor had withdrawn money post-petition from GRL for living expenses. Both Attorney Verterano and Debtor testified that Attorney Verterano had advised Debtor that she could continue to operate GRL post-petition. Attorney Verterano acknowledged on the record

that he had incorrectly advised Debtor regarding the continued operation of GRL and indicated that he would "pay all this." Trustee Zebley instructed Debtor that she could not use the money in GRL's accounts to pay suppliers and that she must immediately cease doing business and turn over the money in the business accounts. Trustee Zebley further instructed that Debtor amend GRL's schedules to include the accounts receivable. Attorney Verterano advised Trustee Zebley that a motion to withdraw the bankruptcy would be filed for GRL. Trustee Zebley indicated that he would likely oppose the motion.

On January 25, 2013, GRL filed both a Motion for Voluntary Dismissal of Case and Amended Schedule B, D, and Statement of Financial Affairs. Pursuant to the amendments, GRL listed its accounts receivable, valued at $38,379.01, named PNC as a creditor in relation to its UCC Financing Statements, and listed its payments to creditors in excess of $5,850.00 within the ninety (90) days prior to filing. Debtor failed to amend GRL's corporate bank account balances pursuant to the January 25, 2013 amendment, but provided GRL's corporate bank statements to Trustee Zebley at the adjourned Section 341 Meeting of Creditors ("Adjourned MOC") held February 22, 2013. With respect to the Motion for Voluntary Dismissal, Trustee Zebley and PNC each filed responses asking the Court to deny said motion. GRL withdrew its Motion for Voluntary Dismissal on March 4, 2013.

At the Adjourned MOC, Debtor testified that following the initial MOC, Debtor did not shut down GRL as instructed because if she had, she would not have any money to fund a new business and GRL was her only source of income to support herself and her daughter. Debtor further testified that as of that date, February 22, 2013, GRL had approximately $50,000.00 in its corporate bank account and roughly $15,000.00 to $17,000.00 in accounts receivable. Trustee Zebley directed Debtor to immediately freeze the corporate accounts and turn the balance over to

him. At trial, Debtor admitted that she did not do so. Debtor ultimately ceased doing business as GRL following the adjourned MOC in February 2013. That same month, Plaintiff commenced the within action by filing its *Complaint to Determine Dischargeability*.

## APPLICABLE STANDARDS & DISCUSSION

Denial of Discharge under 11 U.S.C. §727

"Congress described §727's discharge provisions as 'the heart of the fresh start provisions of the bankruptcy law.'" *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)(citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)). "Completely denying a debtor his discharge, as opposed to avoiding a transfer or declining an individual debt pursuant to §523, is an extreme step and should not be taken lightly." *Rosen*, 996 F.2d at 1531. As such, in evaluating a claim made pursuant to this section, §727 is to be "construed liberally in favor of the debtor." *Id.* Plaintiff, as the objecting creditor, bears the burden of proving grounds for denial pursuant to §727 by preponderance of the evidence. *Sherwood Fine Art, Inc. v. Burrik (In re Burrik)*, 459 B.R. 881, 888 (Bankr.W.D.Pa.2011)(citation omitted). *See also Serio v. DiLoreto (In re DiLoreto)*, 266 Fed.Appx. 140, 144-145 (3d Cir. 2008); *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

a. 11 U.S.C. §727(a)(7)

Section 727(a)(7) of Title 11 of the United States Code provides that the Court shall enter a discharge unless, "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act,

concerning an insider." Where the debtor is an individual, the term "insider" includes a "corporation of which the debtor is a director, officer, or person in control[.]" 11 U.S.C. §101(31)(A)(iv).

Plaintiff argues that because Debtor was the sole person in control of GRL, GRL is an insider of the Debtor. Debtor concedes that as the president, sole member, and only employee of GRL, Debtor shared an "insider" relationship with GRL. Thus, this Court finds that GRL is an insider of Debtor. Accordingly, if the Court finds that Debtor committed an act set forth in 11 U.S.C. §727(2)-(6) in relation to GRL's bankruptcy case, then Debtor will be denied a discharge in her individual bankruptcy case. *Panda Herbal International, Inc. v. Luby (In re Luby)*, 438 B.R. 817, 826-827 (Bankr.E.D.Pa.2010). *See also In re Burrik*, 459 B.R. at 891.

    b.  11 U.S.C. §727(a)(4)(A)

Pursuant to 11 U.S.C. §727(a)(4)(A), this Court shall grant debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account . . ." A debtor's failure to list assets on his or her bankruptcy schedules can constitute a false oath under §727(a)(4). *In re Luby*, 438 B.R at 833.

Plaintiff avers that Debtor made a false oath in connection with the filing of GRL's schedules and amended schedules. Specifically, Plaintiff argues that Debtor failed to disclose accurate bank account balances and the existence of accounts receivable on GRL's original schedules, as well as correct bank account balances on GRL's Amended Schedule B filed January 25, 2013. Debtor does not contest Plaintiff's allegation that GRL's schedules contained inaccuracies; Debtor does contest, however, that such inaccuracies were made "knowingly or fraudulently."

> As is expressly stated in § 727(a)(4)(A), a false oath is not actionable thereunder unless it was "knowingly and fraudulently made." 6 *Collier on Bankruptcy,*

6

¶ 727.04[1][a] at 727–36; *see also Bernard,* 99 B.R. at 570 (same). "Additionally, [in order for] the false oath made by the debtor [to be so actionable, it] must have related to a material matter." Bernard [sic], 99 B.R. at 570; *see also* 6 *Collier on Bankruptcy,* ¶ 727.04[1][b] at 727–37 [ ](same). Finally, and as a corollary of the preceding points,

> [a] debtor's omission of items without intent to conceal them from creditors, due either to inadvertence or because the property is not the type that comes to mind when listing one's disposable property, would not constitute a knowingly false statement under oath made by a debtor with intent to defraud creditors. *Bernard,* 99 B.R. at 570.

*Ivory v. Barbe (In re Barbe)*, 466 B.R. 737, 745-46 (Bankr.W.D.Pa. 2012).

At trial, Debtor testified that her failure to list the accurate balances of the corporate bank accounts and existence of the accounts receivable on GRL's original schedules, as well as the correct bank account balances on the amended schedules, was a result of faulty advice from counsel and confusion by the Debtor.

Specific to the account balances on GRL's original schedules, Debtor testified that she relied on Ms. Vanassa's advice that as long as the petitions were filed by October 31, 2012, the account balances previously provided by Debtor as of September 30, 2012 need not be updated through the date of filing. A debtor may successfully negate the element of intent due to reliance on advice of counsel by showing that: (1) debtor's counsel gave advice, (2) the advice was "legal" advice, (3) debtor relied upon the advice, and; (4) debtor acted in good faith. *Southeastern Pennsylvania Synod of the Evangelical Lutheran Church in America v. Gotwald (In re Gotwald)*, 488 B.R. 854, 873 (Bankr.E.D.Pa. 2013).

After having the benefit of observing Debtor and Ms. Vanassa at trial, as well as reviewing the copies of email correspondence between Debtor and Ms. Vanassa and the transcripts of the MOC and Adjourned MOC, submitted as exhibits at trial, the Court finds that Debtor was acting in good faith when relying upon the legal advice of Ms. Vanassa, an agent of

Debtor's counsel whom counsel authorized to act on his behalf, in preparation and approval of GRL's schedules. Thus, the Debtor lacked the requisite intent to support a denial of discharge under 11 U.S.C. §727(a)(4), relative to her failure to report accurate account balances on GRL's original schedules.

With respect to the Debtor's omission of accounts receivable on GRL's original schedules and failure to provide GRL's correct bank account balances on its amended schedules, Plaintiff argues that Debtor's business experience and Trustee Zebley's indication at the MOC that the schedules needed to reflect the value of assets as of the date of filing evidence Debtor's fraudulent and knowing intent. Debtor denies that her omissions/inaccuracies were made fraudulently, testifying at trial that she was confused by the bankruptcy process and/or the information the schedules were seeking. After reviewing the testimony and evidence presented at trial, this Court finds that any averment of fraudulent intent is contradicted by the Debtor's forthcoming and truthful behavior at the MOC and Adjourned MOC, wherein Debtor openly disclosed the existence of the accounts receivable and voluntarily provided to Trustee Zebley copies of GRL's corporate bank statements. Thus, the Court finds that the Plaintiff failed to preponderantly prove that the omissions/inaccuracies were made fraudulently and knowingly and denial of discharge under §727(a)(4) is not appropriate.[2]

c. 11 U.S.C. §727(a)(2)

Under 11 U.S.C. §727(a)(2), the Court shall enter a discharge unless, "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to

---

[2] In its *Memorandum of Law* filed post-trial, Plaintiff further avers that Debtor failed to honestly and accurately disclose GRL's assets when questioned by Trustee Zebley. This Court disagrees and finds that upon questioning, Debtor freely provided the requested information. Accordingly, the Court will not deny Debtor's discharge pursuant to 11 U.S.C. §727(a)(4).

be transferred, removed, destroyed, mutilated, or concealed" either " (A) property of the debtor, within one year before the date of the filing of the petition; or . . .(B) property of the estate, after the date of the filing of the petition[.]"

"The required intent must be actual; constructive fraud will not suffice." *Heinecke v. Ryan (In re Ryan),* 285 B.R. 624, 630 (Bankr.W.D.Pa.2002)(citation omitted). However, "[b]ecause actual intent is difficult to prove by direct means, it may be inferred from circumstantial evidence." *In re Ryan,* 285 B.R. at 630 (citation omitted).  Proof of harm is not a requirement under §727(a)(2); a debtor may be denied a discharge under this subsection even though no creditor was harmed by the transfer or concealment. *In re Ryan,* 285 B.R. at 630 (citation omitted).

In its Complaint, Plaintiff avers that Debtor, "with the intent to hinder, delay or defraud PNC Bank, failed to disclose the accounts receivable and the accurate bank account balances and then transferred/utilized the accounts receivable and bank account balances in violation of 11 U.S.C. §727(a)(2)(A) and (B)".

At the outset of the analysis under §727(a)(2), the Court notes that, having already found that the Debtor did not fraudulently and knowingly make a false oath in connection with Debtor's failure to accurately list accounts receivable and bank account balances on the original and amended schedules, the Court similarly finds that the Debtor did not possess the requisite intent to conceal the assets under §727(a)(2)(A) and/or (B). Thus, the only remaining issue under §727(a)(2)(A) and (B), is whether Debtor, with intent to hinder, delay or defraud, transferred/utilized the accounts receivable and bank account balances either (A) within one year prior to filing and/or (B) post-petition.

9

### 11 U.S.C. §727(a)(2)(A)

At trial, Debtor testified that in the time period immediately preceding the filing of GRL's Petition, Debtor continued to make payments to GRL's creditors using GRL's corporate bank accounts. These payments, including payments made the day of filing, October 31, 2012, are reflected in GRL's Amended Statement of Financial Affairs ("Amended SOFA") filed January 25, 2013. Plaintiff avers that this usage of the corporate bank accounts warrants a denial of discharge under §727(a)(2)(A). Debtor contests, arguing that since Debtor relied on advice of counsel in continuing GRL's business operations, Debtor lacked the intent to hinder, delay or defraud a creditor by using the corporate accounts.

After review of the evidence and testimony presented at trial, the Court finds that from the date of the MOC through the filing of post-trial briefs, both Debtor and Attorney Verterano have consistently and credibly represented that Attorney Verterano erroneously advised Debtor that she could continue to operate GRL post-petition and that the inaccuracy of this advice did not become known to either Debtor or Attorney Verterano until the MOC held December 28, 2012. Debtor has also credibly testified that she relied on this advice in deciding to continue operating GRL despite deciding to file bankruptcy for GRL. Further, Debtor testified at the Adjourned MOC that the payments to creditors identified in the Amended SOFA were made within the ordinary course of business. Accordingly, this Court finds that Debtor relied on the legal advice of counsel that she could continue to operate GRL in making the prepetition payments and that such reliance was done in good faith. Thus, Debtor did not intend to hinder, delay or defraud a creditor in making the prepetition transfers and relief is not appropriate under 11 U.S.C. §727(a)(2)(A).

11 U.S.C. §727(a)(2)(B)

There is no dispute that Debtor transferred property of the estate post-petition; Debtor admits that she utilized the balance of GRL's corporate accounts after filing to pay creditors and draw living expenses for herself and daughter. Thus, the issue here is whether Debtor possessed the requisite intent to hinder, delay, or defraud a creditor or an officer of the estate in utilizing/transferring funds from the corporate accounts post-petition.

As discussed above, Attorney Verterano erroneously advised Debtor that she could continue to operate GRL post-petition and neither Debtor nor Attorney Verterano discovered the fallaciousness of this advice until the MOC. Debtor, relying in good faith upon her counsel's outright incorrect legal advice, continued to operate GRL as she had prepetition to the detriment of GRL's bankruptcy estate and its creditors. Specifically, Debtor, in maintaining GRL's business operations, continued to collect GRL's accounts receivable, make payments to creditors, and draw an owner's share for living expenses, utilizing and/or transferring the $29,717.86 in corporate bank accounts and $38,379.01 in accounts receivable GRL possessed at the time of filing. Despite this damage, Debtor argues, and this Court agrees, that Debtor's good faith reliance on advice of counsel negates intent with respect to post-petition transfers through the date of the MOC, December 28, 2012. Thus, this Court finds that any transfer of assets between October 31, 2012 and the time of the MOC do not support denial of discharge pursuant to 11 U.S.C. §727(a)(2)(B).

In addition to the post-petition transfers incurred during the period commencing as of the date of filing and ending with the occurrence of the MOC, Plaintiff also argues that Debtor's failure to cease operation of GRL, and the consequent use/transfer of GRL's funds, following the MOC also merits denial of discharge under §727(a)(2)(B).

11

At the MOC, upon learning that the Debtor was not only still conducting business as GRL, but using GRL's corporate accounts to continue such operations, Trustee Zebley instructed Debtor that she must immediately cease doing business as GRL, that she could not use the money in GRL's accounts to pay creditors and further, that she must turn over to him the money in GRL's accounts.  In contravention with Trustee Zebley's instructions, Debtor admitted at trial that following the MOC, she continued to operate as GRL, using its accounts receivable and business accounts to pay suppliers. Plaintiff avers that such usage constitutes transfers of estate assets with intent to hinder, delay or defraud as contemplated by §727(a)(2)(B).  Debtor defends against this argument by asserting that Debtor, in continuing to operate GRL after December 28, 2012, was relying on Attorney Verterano's representation that he would have GRL's bankruptcy case dismissed.

Upon review, the Court finds that any reliance on Attorney Verterano's representation that he would have GRL's case dismissed was not done in good faith and therefore, Debtor cannot rely on advice of counsel to negate intent.  At the MOC, Trustee Zebley explicitly instructed Debtor to immediately cease operations as GRL.  Given that Debtor had, at this point, become aware of Attorney Veterano's significant misunderstanding of bankruptcy law in advising Debtor to continue operating GRL post-petition, the Court finds that it would be unreasonable for the Debtor to forgo Trustee Zebley's instruction based on Attorney Verterano's representation; especially considering that Trustee Zebley stated at the MOC that he would likely oppose GRL's motion to withdraw and that the case must be treated as ongoing despite GRL's intention to withdraw.  Moreover, Debtor testified at the Adjourned MOC that although she was instructed to cease operating GRL, she did not because she would not have any money to fund a new business and GRL is her only source of income.  Clearly, Debtor understood the mandate of

Trustee Zebley and the requirements of the Bankruptcy Code, but chose to ignore his instruction and the bankruptcy law in favor of her own personal interest. Accordingly, this Court finds that not only was the Debtor's willful disregard for Trustee Zebley's instruction to cease operations as GRL, including his order to discontinue use of GRL's accounts, not done in good faith, but also that the circumstances of the case show that the transfers made following the MOC were done with intent to hinder, delay, or defraud. Thus, Debtor's post-petition transfers of GRL assets following the MOC support a denial of discharge pursuant to §727(a)(2)(B).

Moreover, even if Debtor could show that she was acting in good faith when she failed to discontinue operation of GRL, and thereby transferring its assets, following the MOC, Debtor's behavior following the Adjourned MOC would also warrant a denial of discharge pursuant to 11 U.S.C. §727(a)(2)(B). Specifically, at the Adjourned MOC, Debtor was instructed by Trustee Zebley to immediately freeze GRL's bank account containing roughly $50,000.00 and turn over the proceeds. Debtor admitted at trial that she did not, allowing outstanding checks to be drawn on the account and estate assets to be transferred. Consequently, the Debtor's failure to act on Trustee Zebley's instructions following the Adjourned MOC also supports denial of discharge under §727(a)(2)(B).

## CONCLUSION

Based on the foregoing, Plaintiff has failed to demonstrate by a preponderance of the evidence that Debtor should be denied a discharge pursuant to 11 U.S.C. §727(a)(2)(A) and §727(a)(4). However, Plaintiff has successfully shown by a preponderance of the evidence that Debtor's discharge should be denied pursuant to 11 U.S.C. §727(a)(2)(B) and 11 U.S.C. §727(a)(7). Accordingly, the relief sought in Plaintiff's *Second Amended Complaint to*

*Determine Dischargeability* is granted. An appropriate Order will be entered consistent with this

Memorandum Opinion.


Dated: May 12, 2014                                    /s/Carlota M. Böhm
                                                       Carlota M. Böhm
                                                       United States Bankruptcy Judge



**CASE ADMINISTRATOR TO MAIL TO:**
Donna M. Donaher, Esq.
Christopher L. Borsani, Esq.
Joseph E. Fieschko, Jr., Esq.
Michelle L. Roach
Frank G. Verterano, Esq.